1  HYDEE FELDSTEIN SOTO, City Attorney (SBN 106866)
2  VALERIE FLORES, Chief Assistant City Attorney (SBN 138572)
   KATHLEEN KENEALY, Chief Assistant City Attorney (SBN 212289)
3  GABRIEL S. DERMER, Assistant City Attorney (SBN 229424)
   MOLLY STEPHENS, Deputy City Attorney (SBN 232211)
4  Office of the Los Angeles City Attorney
   200 North Main Street, City Hall East, 6th Floor
5  Los Angeles, California 90012
6  Telephone:  213-978-1868
   Facsimile:  213-978-7011
7  Email:  molly.stephens@lacity.org

8  *Attorneys for Defendants*

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                    **WESTERN DIVISION**

12

13 | UNITED STATES OF AMERICA, | Case No.: 2:25-cv-05917-FMO-JC |

14 |            Plaintiff, | **NOTICE OF MOTION AND** |
15 |                       | **MOTION TO DISMISS** |
   |            vs.        | **COMPLAINT PURSUANT TO** |
16 |                       | **FED. R. CIV. PROC. 12(b)(6)** |
17 | CITY OF LOS ANGELES; KAREN BASS, |  |
   | Mayor of Los Angeles, in her official | Hearing |
18 | capacity; LOS ANGELES CITY COUNCIL; | Date:  October 2, 2025 (selected date |
   | MARQUEECE HARRIS-DAWSON, | of September 25, 2025 is closed) |
19 | President of the Los Angeles City Council, in | Time:  10:00 a.m. |
20 | his official capacity, | Courtroom 6D |
   |                       | Hon. Fernando M. Olguin |
21 |            Defendants. |  |

22

23 [Filed concurrently with
   Declaration of Molly Stephens;
24 Request for Judicial Notice;
   [Proposed] Order]
25

26

27

28
   ───────────────────────────────────────────────
        RULE 12(b)(6) MOTION TO DISMISS COMPLAINT

**TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR COUNSEL:**

**PLEASE TAKE NOTICE THAT** on October 2, 2025, at 10:00 a.m. in Courtroom 6D of the United States District Court for the Central District of California, located at the United States Courthouse, 350 West 1st Street, 6th Floor, Los Angeles, CA 90012, before the Honorable Fernando M. Olguin, Defendants City of Los Angeles, Karen Bass, the Los Angeles City Council, and Marqueece Harris-Dawson will, and hereby do, move for an order dismissing the Complaint filed by the United States of America under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the accompanying Request for Judicial Notice and Declaration of Molly Stephens (the "Stephens Declaration"), the file and all pleadings in this matter, any oral argument, any additional matters upon which judicial notice may be taken, and any and all other matters this Court deems just and necessary.

As set forth in the concurrently filed Stephens Declaration, this Motion is made following the conference of counsel pursuant to Central District of California Local Rule 7-3, which took place on August 14, 2025.

Dated:  August 21, 2025  HYDEE FELDSTEIN SOTO, City Attorney
           VALERIE FLORES, Chief Assistant City Attorney
           KATHLEEN KENEALY, Chief Assistant City Attorney
           GABRIEL S. DERMER, Assistant City Attorney
           MOLLY STEPHENS, Deputy City Attorney

           By: */s/ Molly Stephens*
              Molly Stephens, Deputy City Attorney
              Attorneys for Defendants

RULE 12(b)(6) MOTION TO DISMISS COMPLAINT

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................1

II.   RELEVANT BACKGROUND...............................................2

    A.   The City Exercised Its Sovereign Power to Pass the Ordinance ...............2

    B.   The Ordinance Regulates City Personnel and Resources .........................3

    C.   The Ordinance Mirrors a Similar State Law That Has Been Upheld as Constitutional ................................................................5

    D.   The United States Asserts Similar Preemption and Intergovernmental Immunity Challenges to the Ordinance as It Did to the Values Act...........7

III.  LEGAL STANDARD ........................................................8

IV.   LEGAL ARGUMENT ......................................................8

    A.   The United States Does Not, and Cannot, State a Preemption Claim ........8

        1.   The Presumption Against Preemption Applies to the Ordinance.....9

        2.   The Ordinance Is Not an Obstacle to Enforcement of Federal Immigration Laws ................................................................9

        3.   The Ordinance's Information Sharing Restrictions Do Not Contradict Any Requirements of Federal Law ..............................11

            a.   The United States Relies on Three Sections of the United States Code, But Its Claim Turns on 8 U.S.C. § 1373 ........11

            b.   The Ordinance Does Not Contradict the Requirements of 8 U.S.C. § 1373................................................................13

            c.   To the Extent There Is a Direct Conflict, the Federal Laws Violate the Tenth Amendment's Anticommandeering Doctrine and Are Void ........................................................14

i

B.    The United States Does Not, and Cannot State a Claim Under the
Intergovernmental Immunity Doctrine ....................................................17

1.    The Ordinance Is Not an Unlawful Regulation of the Federal
Government.......................................................................................17

2.    The Ordinance Does Not Improperly Discriminate Against the
Federal Government.........................................................................19

C.    The United States Does Not State Separate Claims Against the City
Council, Mayor Bass, and Council President Harris-Dawson.................21

V.    CONCLUSION ....................................................................................................22

RULE 12(b)(6) MOTION TO DISMISS COMPLAINT

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*1210 Cacique Street, LLC v. City of Santa Barbara*,
    2024 WL 1600323 (C.D. Cal. Mar. 1, 2024)................................................21

*Arizona v. United States*,
    567 U.S. 387 (2012)................................................................................9, 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................8

*City and County of San Francisco v. Barr*,
    965 F.3d 753 (9th Cir. 2020) ......................................................................14

*City and County of San Francisco v. Garland*,
    42 F.4th 1078 (9th Cir. 2022) ...............................................................12, 14

*City of Chicago v. Barr*,
    961 F.3d 882 (7th Cir. 2020) ........................................................................9

*City of Chicago v. Sessions*,
    321 F. Supp. 3d 855 (N.D. Ill. 2018)..............................................12, 15, 16

*City of Philadelphia v. Sessions*,
    280 F. Supp. 3d 579 (E.D. Pa. 2017)..........................................................14

*Colorado v. United States Department of Justice*,
    455 F. Supp. 3d 1034 (D. Co. 2020)............................................................12

*Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*,
    533 F.3d 780 (9th Cir. 2008) .................................................................21, 22

*Doe v. United States*,
    419 F.3d 1058 (9th Cir. 2005) ......................................................................8

*Geo Group, Inc. v. Newsom*,
    50 F.4th 745 (9th Cir. 2022) .......................................................................18

RULE 12(b)(6) MOTION TO DISMISS COMPLAINT

*In re Gilead Sciences Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ...................................................................................8

*Kentucky v. Graham*,
   473 U.S. 159 (1985)...................................................................................................21

*Murphy v. National Collegiate Athletic Association*,
   584 U.S. 453 (2018).......................................................................14, 15, 16, 17

*North Dakota v. United States*,
   495 U.S. 423 (1990)...................................................................................................17

*Nwauzor v. GEO Group, Inc.*,
   127 F.4th 750 (9th Cir. 2025) ...........................................................9, 20, 21

*Ocean County Bd. of Comm'rs v. Attorney Gen.*,
   8 F.4th 176 (3d Cir. 2021) .....................................................................................17

*Porto v. City of Laguna Beach*,
   2012 WL 3810475 (C.D. Cal. Aug. 7, 2012)...............................................21

*Printz v. United States*,
   521 U.S. 898 (1997)...................................................................................................16

*Reno v. Condon*,
   528 U.S. 141 (2000)...................................................................................................16

*United States v. California*,
   921 F.3d 865 (9th Cir. 2019) ...................................................................passim

*United States v. King County*,
   122 F.4th 740 (9th Cir. 2024) ............................................................................18

*United States v. Salerno*,
   481 U.S. 739 (1987)......................................................................................................8

*United States v. Washington*,
   596 U.S. 832 (2022)...................................................................................................19

*Wyeth v. Levine*,
   555 U.S. 555 (2009)......................................................................................................9

iv

RULE 12(b)(6) MOTION TO DISMISS COMPLAINT

**<u>Statutes</u>**

8 U.S.C. § 1226, ........................................................................................... 18

8 U.S.C. § 1357 ...................................................................................... 12, 18

8 U.S.C. § 1373 ..................................................................................... passim

8 U.S.C. § 1644 ...................................................................... 12, 14, 15, 16

Cal. Gov. Code § 7284 ................................................................................... 5

Cal. Gov. Code § 7284.4 ............................................................................... 5

Cal. Gov. Code § 7284.6 ............................................................. 4, 5, 6, 13

RULE 12(b)(6) MOTION TO DISMISS COMPLAINT

## I.    INTRODUCTION

In this action, Plaintiff United States of America raises a meritless facial challenge under the Supremacy Clause to an ordinance enacted by the City of Los Angeles in December 2024.  The Ordinance mirrors a state law, known as the California Values Act, that has been in place since 2018.  Both the Ordinance and the Values Act prohibit the use of government resources to assist or cooperate with federal immigration enforcement.

Through its challenge to the Ordinance, the United States seeks to relitigate its previous challenge to the Values Act that was *rejected* by the Ninth Circuit in *United States v. California*, 921 F.3d 865 (9th Cir. 2019).  Similar to its claims in *California*, the United States asserts claims against Defendants City of Los Angeles, the Los Angeles City Council, and Mayor Karen Bass and City Council President Marqueece Harris-Dawson in their official capacities (collectively, the "City") for preemption and violation of the intergovernmental immunity doctrine.

The Ninth Circuity's decision in *California* requires dismissal of the preemption claim.  The Ninth Circuit previously held that the same or similar provisions of the Values Act are not preempted by federal immigration laws because they are not obstacles to the enforcement of federal immigration laws and do not conflict with the same federal immigration laws cited in this action.  *Id.* at 886-93.

The Ninth Circuit's decision in *California* also requires dismissal of one claim for violation of the intergovernmental immunity based on unlawful discrimination against the federal government.  The Ninth Circuit previously held that the same or similar provisions of the Values Act do not unlawfully discriminate against the federal government in violation of the intergovernmental immunity doctrine.  *Id.* at 891.

The only remaining claim is a separate claim for violation of the intergovernmental immunity doctrine based on unlawful regulation of the federal government.  This claim was rightfully not raised as a challenge to the Values Act, and it should not have been raised here.  The Ordinance, by its express terms, regulates only

City personnel and resources.  The City has the authority to regulate its own personnel and resources, and the United States has no legitimate basis for claiming that the Ordinance is an unlawful regulation of the federal government.  In fact, any attempt to deny the City the ability to regulate its own personnel and resources would violate the Tenth Amendment.

This action should be dismissed with prejudice.  All claims are legally defective, and the defects cannot be cured.

## II.    RELEVANT BACKGROUND

### A.    The City Exercised Its Sovereign Power to Pass the Ordinance

Contrary to the allegations in the Complaint, the City began the process to codify the Ordinance in March 2023—well before the 2024 presidential election—when a Motion was introduced before the City Council.  *Compare* Compl. (Dkt. No. 1)  ¶¶ 2, 36, *with* Request for Judicial Notice, filed concurrently herewith ("RJN"), Ex. A (Mot.).  The Motion requested that the City Attorney prepare a draft of the Ordinance, which would "prohibit, to the extent permissible by law, any City resources, property, or personnel from being utilized for any federal immigration enforcement or to cooperate with federal immigration authorities in … federal immigration enforcement."  RJN, Ex. A, p. 5.

The purpose of the Ordinance was to protect the City's immigrant communities, who comprise over 34 percent of the City's population, parent the majority of school children in the Los Angeles area, and "are a vital part of the city's labor force and an integral part of Los Angeles' diverse communities."  *Id.*  The Motion recognized prior City directives and resolutions to support and protect immigrant communities, including Mayor Eric Garcetti's Executive Directive 20 of March 2017, prohibiting City employees from, among other things, assisting or cooperating with federal agents or agencies in federal immigration enforcement, including by granting agents access to City facilities not open to the general public.  *Id.*; RJN, Ex. B (Exec. Directive 20), p. 10.  These prior directives and resolutions had not been "enshrined into local municipal law,"

RULE 12(b)(6) MOTION TO DISMISS COMPLAINT

which the Motion sought to accomplish by means of a new ordinance. RJN, Ex. A, p. 5.

The City Council adopted the Motion on June 9, 2023. RJN, Ex. C. On November 12, 2024, after taking care to ensure that the Ordinance complied with all applicable laws, the City Attorney transmitted a draft of the Ordinance to the City Council. RJN, Ex. D. The City Council requested limited changes to the draft Ordinance, along with an Urgency Clause in light of news reports that the incoming Trump administration intended to "reverse numerous humanitarian parole programs" and "allow for a program of mass deportation, which will directly affect the public peace, health, and safety of all residents across the City." RJN, Ex. E (motions to amend), Ex. F (final Ordinance), p. 28. As the Urgency Clause made clear, "all of Los Angeles is safer when our City personnel maintain a relationship of trust, respect, and cooperation with City residents," including the "cooperation of immigrant communities to report crimes and assist in the investigation and prosecution of criminals." RJN, Ex. F, pp. 28-29. The Ordinance became effective on December 19, 2024. *Id.*, p. 30.

## B. The Ordinance Regulates City Personnel and Resources

The Ordinance regulates only City personnel and resources, as the Complaint recognizes. *Id.*, pp. 26-28; Compl. ¶¶ 37-39; *see also* RJN, Ex. G (Ordinance codified in L.A. Admin. C., Ch. 19). The Ordinance sets forth two categories of prohibitions in Sections 19.191 and 19.192.

First, unless required by federal or state law, Section 19.191 prohibits City resources, including City personnel and property, from being used to:

(a)   "[i]nquire into or collect information about an individual's Citizenship or Immigration Status, unless such information is necessary to provide a City service, … for election-related purposes or appointment to a City office or commission, or as required for purposes of City employment or the disbursement of City funds";

(b)   "[i]nvestigate, cite, arrest, hold, transfer, or detain any person for the

3

RULE 12(b)(6) MOTION TO DISMISS COMPLAINT

purpose of Immigration Enforcement, except as authorized under California Government Code Section 7284.6(b)(1)";

(c)     "[r]espond to any administrative warrant or other request to detain, transfer, or notify any Immigration Agent about the status or release of any individual for the purpose of Immigration Enforcement";

(d)     "[p]rovide any Immigration Agent access to any non-public areas of property owned or controlled by the City, including City jails, for the purpose of Immigration Enforcement";

(e)     "[m]ake any person in City custody available to any Immigration Agent for an interview for the purpose of Immigration Enforcement"; and

(f)     "[p]articipate in Immigration Enforcement in any operation, joint operation, or joint task force involving any Immigration Agent."

RJN, Ex. G (§§ 19.191(a)-(f)).

Second, Section 19.192 provides that "[e]xcept as required by 8 U.S.C. § 1373 or other applicable federal or state law, no City personnel shall provide access to any City data or information that can be used to determine or trace a person's Citizenship or Immigration Status to any Immigration Agent." RJN, Ex. G (§ 19.192).[1] This means that "City personnel shall not provide City data or information that can be used to determine or trace a person's Citizenship or Immigration Status to any City contractor unless the contractor first agrees in writing to prohibit the contractor's employees and subcontractors from providing that data or information to any Immigration Agent." *Id.* Section 19.192 ends with a general confidentiality requirement that "[a]ll City employees shall treat information that can be used to distinguish or trace a person's Citizenship or Immigration Status, either on its own or when combined with other information, as confidential information, … and shall handle, maintain, and secure such

---

[1] As discussed in more detail below, 8 U.S.C. § 1373 generally prohibits state and local governments from restricting the sharing of information regarding citizenship or immigration status with federal immigration authorities. *See infra* § IV.A.3(a).

4

RULE 12(b)(6) MOTION TO DISMISS COMPLAINT

information according to the standards for confidential information set forth in City policy." *Id.*

The Ordinance defines Citizenship or Immigration Status, Immigration Agent, and Immigration Enforcement. *Id.* (§ 19.190). The Ordinance also specifies that it does not restrict the City from complying with judicial warrants. *Id.* (§ 19.193).

## C.    The Ordinance Mirrors a Similar State Law That Has Been Upheld as Constitutional

The Ordinance mirrors California's Values Act, also referred to as SB 54, that became effective January 1, 2018. Cal. Gov. Code § 7284 *et seq.* Specifically:

• Similar to Section 19.191(a) of the Ordinance, which prohibits City personnel from inquiring into or collecting information about an individual's Citizenship or Immigration Status, the Values Act prohibits law enforcement agencies from "[i]nquiring into an individual's immigration status." *Compare* RJN, Ex. G (§ 19.191(a)), *with* Cal. Gov. Code § 7284.6(a)(1)(A).

• Similar to Section 19.191(b) of the Ordinance, which prohibits City personnel from investigating, citing, arresting, holding, transferring, or detaining a person for Immigration Enforcement absent a judicial warrant or probable cause determination, the Values Act prohibits law enforcement agencies from engaging in substantially identical activities absent a judicial warrant or probable cause determination. *Compare* RJN, Ex. G (§ 19.191(a)), *with* Cal. Gov. Code § 7284.6(a)(1), *and id.* § 7284.6(a)(1)(B), *and id.* § 7284.6(a)(1)(E), *and id.* § 7284.6(a)(4). Section 19.191(b) even incorporates the exceptions set forth in Section 7284.6(b)(1) of the Values Act. RJN, Ex. G (§ 19.191(a)). In addition, both the Ordinance and the Values Act use substantially identical definitions of "immigration enforcement." *Compare* Cal. Gov. Code § 7284.4(f), *with* RJN, Ex. G (§ 19.190) (tracking the definition in the Values Act, but adding the term "natural person").

• Similar to Section 19.191(c) of the Ordinance, which prohibits City personnel from responding to an administrative warrant or other request to notify an

5

Immigration Agent about the release status of an individual, the Values Act prohibits law enforcement agencies from responding to notification requests by providing release dates or other non-public information, although public agencies may provide information in the specific circumstances listed in California Government Code Section 7282.5. *Compare* RJN, Ex. G (§ 19.191(c)), *with* Cal. Gov. Code § 7284.6(a)(1)(C).

- Similar to Section 19.191(f) of the Ordinance, which prohibits City personnel from participating in an Immigration Enforcement operation, joint operation, or joint task force, the Values Act prohibits law enforcement agencies from participating in joint law enforcement task forces primarily related to immigration enforcement. *Compare* RJN, Ex. G (§ 19.191(f)), *with* Cal. Gov. Code § 7284.6(b)(3).

- Similar to Section 19.192 of the Ordinance, which prohibits City personnel from disclosing information that can be used to determine or trace a person's Citizenship or Immigration Status "[e]xcept as required by 8 U.S.C. § 1373," the Values Act prohibits law enforcement agencies from disclosing non-public personal information about a person, but does not restrict sharing information regarding citizenship or immigration status with federal immigration authorities pursuant to 8 U.S.C. § 1373. *Compare* RJN, Ex. G (§ 19.192), *with* Cal. Gov. Code § 7284.6(a)(1)(D), *and id.* § 7284.6(e).

The only provisions of the Ordinance that do not have analogous provisions in the Values Act are those prohibiting City personnel from providing Immigration Agents access to non-public areas of City property and making individuals in City custody available to Immigration Agents for an interview for Immigration Enforcement. *Compare* RJN, Ex. G (§§ 19.191(d)-(e)), *with* Cal. Gov. Code § 7284.6.

The Ninth Circuit upheld the constitutionality of the Values Act in *California*. 921 F.3d at 886-93. In response to the United States' preemption challenge, the Ninth Circuit held that the Values Act was not preempted, either as an obstacle to federal immigration laws or as being in direct conflict with 8 U.S.C. § 1373 and similar laws. *Id.* at 888, 893. In response to the United States' intergovernmental immunity challenge,

6

RULE 12(b)(6) MOTION TO DISMISS COMPLAINT

the Ninth Circuit held that the Values Act does not constitute unlawful discrimination against the federal government in violation of the intergovernmental immunity doctrine. *Id.* at 891.

### D.    The United States Asserts Similar Preemption and Intergovernmental Immunity Challenges to the Ordinance as It Did to the Values Act

The United States asserts three claims challenging the Ordinance. The first claim for preemption mirrors the preemption claim in *California*, alleging that the Ordinance violates the Supremacy Clause because it "stands as an obstacle to the accomplishment and execution of the federal immigration laws" and "directly contradicts the requirements of 8 U.S.C. 1373(a)." Compl. ¶ 67 (internal quotation marks and brackets omitted). The United States further alleges that the Ordinance is preempted not only by Section 1373(a) of Title 8 of the United States Code, but also by Sections 1373(b), 1644, and 1357(g)(1)(A) to (B). Compl. ¶ 68.

The third claim for unlawful discrimination against the federal government mirrors the intergovernmental immunity claim in *California*, alleging that the Ordinance violates the intergovernmental immunity doctrine by singling out federal immigration laws and authorities, notably Immigration and Customs Enforcement ("ICE") and Customs and Border Protection ("CBP"), for disfavored treatment. *Id.* ¶¶ 79-82.

The second claim for unlawful regulation of the federal government was not asserted in *California*. The United States alleges that the Ordinance violates the intergovernmental immunity doctrine because it regulates the federal government. *Id.* ¶ 72.

The claims asserted by the United States present facial challenges to the Ordinance. *See id.* ¶¶ 53-83 (alleging why the Ordinance, on its face, is unconstitutional). Although the United States alleges facts purporting to show the City's obstruction of federal immigration enforcement, not one of those facts is about an application of the Ordinance. *See id.* ¶¶ 45-50. Instead, the United States alleges facts about the ICE raids in Los Angeles in June 2025, including that (i) "rioters" responded

7

to the raids by committing crimes; (ii) one of 15 City Councilmembers requested that the LAPD Chief warn the City Council of impending raids, which the Chief refused to do; (iii) the Council President expressed his opinion that federal immigration officers "are not our partners"; and (iv) Mayor Karen Bass called on President Trump to stop the raids, as she has a First Amendment right to do. *See id.* ¶¶ 46-50. Notably, the United States alleges that ICE operations were not obstructed, but in fact "succeeded in apprehending individuals convicted of murder, burglary, domestic violence, sexual offenses, and other violent crimes." *Id.* ¶ 45.

## III.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of claims asserted in a complaint. To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a court "must construe the complaint in the light most favorable to the plaintiff, taking all … allegations as true and drawing all reasonable inferences … in [its] favor," a court is not required to accept allegations that contradict facts properly subject to judicial notice, conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008); *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).

A facial challenge to a law is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [law] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The fact that a law "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Id.*

## IV.    LEGAL ARGUMENT

### A.    The United States Does Not, and Cannot, State a Preemption Claim

The United States bases its preemption claim on two theories—that the Ordinance

8

stands as an obstacle to the enforcement of federal immigration laws and that it "directly contradicts" the requirements of certain immigration laws.  Compl. ¶¶ 67-68.  Neither theory has merit.

### 1.    The Presumption Against Preemption Applies to the Ordinance

As an initial matter, the United States faces a stringent standard to show the Ordinance is preempted, on top of the stringent standard for its facial challenge to the Ordinance.  "There is a presumption against preemption when a state regulates in an area of historic state power."  *Nwauzor v. GEO Group, Inc.*, 127 F.4th 750, 767 (9th Cir. 2025) (internal quotation marks omitted).  "To overcome the presumption against preemption, the challenging party must show a 'clear and manifest purpose of Congress' to preempt state law."  *Id.* at 768 (quoting *Arizona v. United States*, 567 U.S. 387, 400 (2012)); *see also Wyeth v. Levine*, 555 U.S. 555, 565 (2009) ("[I]n a field which the States have traditionally occupied, ... we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.") (internal quotation marks omitted).

Here, the United States must overcome this presumption because states have the historic, sovereign power to regulate and protect the welfare, health, and safety of their people, which are purposes of the Ordinance.  *See supra* § II.A; *Wyeth*, 555 U.S. at 565 n.3; *City of Chicago v. Barr*, 961 F.3d 882, 891-92 (7th Cir. 2020); *California*, 921 F.3d at 886.

### 2.    The Ordinance Is Not an Obstacle to Enforcement of Federal Immigration Laws

The Ninth Circuit's decision in *California* controls the United States' preemption claim that the Ordinance is an obstacle to the enforcement of federal immigration laws generally, requiring dismissal of this claim.[2]

In *California*, the United States challenged the Values Act on similar grounds that

---

[2]   The theory that specific federal immigration laws "directly contradict[]" the Ordinance are discussed in Section IV.A.3, *infra*.

9

it "unlawfully obstructs the enforcement of federal immigration laws." *Compare California*, 921 F.3d at 866, *with* Compl. ¶ 67. The Ninth Circuit rejected that argument, holding that the Values Act prohibits only assistance in federal immigration enforcement, and "refusing to help is not the same as impeding." *Id.* at 888. The same is true of the Ordinance. It contains the same types of prohibitions on assistance as the Values Act, except it also prohibits City personnel from providing federal immigration agents access to non-public areas of City property and from making people in City custody available for immigration enforcement interviews absent a judicial warrant. *See supra* § II.C. These additional provisions are likewise prohibitions on assistance because no federal law compels state or local governments to provide federal immigration agents with access to non-public areas of their property or to present people in their custody for immigration enforcement interviews. *See California*, 921 F.3d at 887 (obstacle preemption requires a federal law compelling some action). Under the Ordinance, federal immigration agents are free to do their jobs, but City personnel will not assist them by providing special access to non-public City property or to people in City custody, both of which the City has a sovereign right to regulate. *See supra* § IV.A.1.

The United States alleges that the Ordinance "frustrates the expectation of collaboration reflected in the immigration laws" (Compl. ¶ 67), but the Ninth Circuit has explicitly held that frustration of expectations is irrelevant to preemption. "Federal schemes are inevitably frustrated when states opt not to participate in federal programs or enforcement efforts." *California*, 921 F.3d at 890. But where the state "retains the right of refusal," as it does with enforcement of federal immigration laws, "the choice of a state to refrain from participation cannot be invalid under the doctrine of obstacle preemption." *Id.* at 889-90. Moreover, even if Congress expected cooperation between federal immigration authorities and state and local governments, courts "must distinguish between expectations and requirements" when federalism is implicated. *Id.* at 891.

As the Ninth Circuit held in *California*, the federal government cannot "require"

10

RULE 12(b)(6) MOTION TO DISMISS COMPLAINT

the City to cooperate in immigration enforcement "without running afoul of the Tenth Amendment." *Id.* The Ordinance, which prohibits City personnel and resources from being used to assist and cooperate in federal immigration enforcement, is not preempted by the federal immigration laws under an obstacle preemption theory as a matter of law, requiring dismissal of this claim. *See id.* at 886-91.

### 3. The Ordinance's Information Sharing Restrictions Do Not Contradict Any Requirements of Federal Law

The United States specifically challenges the information sharing restrictions in Sections 19.191(a) and 19.192 of the Ordinance as conflicting with the requirements of certain federal immigration laws. Compl. ¶¶ 67-68. As set forth in more detail below, the United States cannot state a preemption claim based on this theory either.

### a. The United States Relies on Three Sections of the United States Code, But Its Claim Turns on 8 U.S.C. § 1373

The United States cites three sections of Title 8 of the United States Code that allegedly directly contradict the Ordinance: (i) Sections 1373(a) and (b); (ii) Section 1644; and (iii) Section 1357(g)(10)(A) and (B). Compl. ¶¶ 67-68.

Section 1373 prohibits government entities or officials from restricting the sharing of information regarding citizenship or immigration status with federal immigration officials. Specifically, subsection (a) provides that "a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service ["INS"] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a). Section 1373(b) sets forth "additional authority of government entities" and provides that:

> "[N]o person or agency may prohibit, or in any way restrict,
> a Federal, State, or local government entity from doing any of
> the following with respect to information regarding the
> immigration status, lawful or unlawful, of any individual:

11

(1) Sending such information to, or requesting or receiving such information from, [INS].

(2) Maintaining such information.

(3) Exchanging such information with any other Federal, State, or local government entity.

8 U.S.C. § 1373(b).  As one court has noted, "Subsection (b) does not meaningfully expand the statute's scope by including 'person[s]': Who but a government actor can restrict the activities of a government entity or official?"  *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 868-69 (N.D. Ill. 2018).

Section 1644 provides that "no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from [INS] information regarding the immigration status, lawful or unlawful, of an alien in the United States." 8 U.S.C. § 1644.  Section 1644 is functionally equivalent to Section 1373.  *Colorado v. United States Department of Justice*, 455 F. Supp. 3d 1034, 1044 (D. Co. 2020); *see also City and County of San Francisco v. Garland*, 42 F.4th 1078, 1083 (9th Cir. 2022) (United States agreeing for purposes of the litigation that "Sections 1373 and 1644 are interchangeable").

Section 1357(g)(10) does not set forth any requirements at all.  Instead, it falls within a statute providing that the Attorney General "may" enter into a written agreement with state or local officers or employees to perform immigration officer functions.  8 U.S.C. § 1357(g)(1).  The two subsections cited by the United States merely provide that "[n]othing in this subsection shall be construed to require an agreement under this subsection in order for any officer or employee of a State or political subdivision of a State (A) to communicate with the Attorney General regarding the immigration status of any individual … ; or (B) otherwise to cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States."  8 U.S.C. §§ 1357(g)(10)(A)-(B).

Because Section 1644 is functionally equivalent to Section 1373 and because

12

Section 1357(g)(10) does not set forth any requirements, the United States' preemption claim turns (unsuccessfully) on Section 1373.

> **b.    The Ordinance Does Not Contradict the Requirements of 8 U.S.C. § 1373**

As the United States alleges, the only provisions in the Ordinance governing information about a person's Citizenship or Immigration Status are Sections 19.191(a) and 19.192.  Compl. ¶ 67; *supra* § II.B.  Any claim based on Section 19.191(a) is easily dismissed because it restricts a City employee only from *inquiring into or collecting* information about a person's Citizenship or Immigration Status.  RJN, Ex. G (§ 19.191(a)).  It therefore does not conflict with Section 1373, which governs only the sharing, maintenance, or exchange of information *already collected*.  8 U.S.C. §§ 1373(a)-(b).  Nothing in Section 1373 requires affirmative inquiry into or collection of information.  *See id.*

Section 19.192 restricts City personnel from providing access to "any City data or information that can be used to determine or trace a person's Citizenship or Immigration Status," but the Ninth Circuit's holding in *California* again controls this case and requires a finding that Section 19.192 does not conflict with the requirements of Section 1373 for two reasons.

First, Section 19.192 expressly excludes from its restrictions anything "required by 8 U.S.C. § 1373 or other applicable federal or state law."  *See supra* § II.B.  This kind of express carveout or savings clause means that the Ordinance and Section 1373 do not conflict.  *See California*, 921 F.3d at 891 (citing the savings clause in Cal. Gov. Code § 7284.6(e) to hold that the Values Act "expressly *permits* the sharing of [information required by Section 1373], and so does not appear to conflict with  [Section] 1373") (emphasis in original).  The Ordinance therefore expressly permits compliance with Section 1373, and it therefore does not, and cannot, conflict with Section 1373.  *See id.*

Second, Section 19.192 of the Ordinance restricts City personnel from providing access to information that does not fall within Section 1373.  As the Ninth Circuit has

RULE 12(b)(6) MOTION TO DISMISS COMPLAINT

held multiple times, Section 1373 extends only to "a person's legal classification under federal law," or in other words "what one's immigration status is." *California*, 921 F.3d at 891; *Garland*, 42 F.4th at 1085 ("As we stated in *California*, Section 1373 only covers immigration-status information—i.e., 'what one's immigration status is.'"); *City and County of San Francisco v. Barr*, 965 F.3d 753, 763 (9th Cir. 2020) (same). Section 19.192, on other hand, restricts City personnel from providing access to "any City data or information that can be used to determine or trace a person's Citizenship or Immigration Status." RJN, Ex. G (§ 19.192). This information, which would include identification information, such as a foreign passport or mailing address, is broader than a person's legal classification. In addition, as the United States admits, "Citizenship or Immigration Status," as used in the Ordinance, is defined broadly to include more than a person's legal classification. *Id.* (§ 19.190); Compl. ¶ 40. Accordingly, Section 19.192 restricts the sharing of information not covered by Section 1373.

Because the Ordinance expressly permits City personnel to comply with Section 1373 and restricts the sharing of information not covered by Section 1373, there is no direct conflict for preemption purposes, requiring dismissal of this claim. *See California*, 921 F.3d at 891-93.

### c.   To the Extent There Is a Direct Conflict, the Federal Laws Violate the Tenth Amendment's Anticommandeering Doctrine and Are Void

Although Section 1373 and the functionally equivalent Section 1644 do not preempt the Ordinance, to the extent there is any doubt, these laws cannot support a preemption claim because they violate the anticommandeering doctrine and are therefore void and unenforceable.

The principle of federalism pervades the Constitution, which confers on Congress only certain enumerated powers, and reserves all other legislative power to the states through the Tenth Amendment. *Murphy v. National Collegiate Athletic Association*, 584 U.S. 453, 471 (2018); *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 647

14

(E.D. Pa. 2017). "The anticommandeering doctrine … is simply the expression of a fundamental structural decision … to withhold from Congress the power to issue orders directly to the States." *Murphy*, 584 U.S. at 470. As the Supreme Court confirmed in *Murphy*, the anticommandeering doctrine applies with equal force to federal statutes that direct states to enact certain types of laws and those that direct states to refrain from enacting certain types of laws. *Id.* at 474-75.

Sections 1373 and 1644 violate the anticommandeering doctrine because they direct states and local governments to refrain from enacting laws that restrict themselves and their officials from communicating certain information with federal immigration authorities. *See* 8 U.S.C. §§ 1373(a)-(b), 1644; *City of Chicago*, 321 F. Supp. 3d at 869-70.[3] These laws thus (i) supplant local control of local officers and employees, which "lies at the heart of state sovereignty"; (ii) "indirectly constrain[] local rule-making by precluding city lawmakers from passing laws … that institute locally-preferred policies"; (iii) "redistribute[] local decision-making power by stripping it from local policymakers and installing it instead in line-level employees who may decide whether or not to communicate with INS," which "effects a federally-imposed restructuring of power within state government"; and (iv) prevent a local government from "extricating itself from federal immigration enforcement" by eliminating the local government's ability to control its employees' communications with INS. *See City of Chicago*, 321 F. Supp. 3d at 869-70.

The United States has argued in previous cases that Sections 1373 and 1644 are constitutional for three separate reasons, but the arguments do not save the statutes:

First, the United States has argued that the statutes are constitutional because they evenhandedly regulate both state and private parties, but the plain language of Section

---

[3] Although Section 1644 is written in the passive voice that "no State or local government entity may be prohibited, or in any way restricted," it regulates state and local governments because only "a government actor can restrict the activities of a government entity or official." *City of Chicago*, 321 F. Supp. 3d at 868-69.

1373 demonstrates that it applies only to government actors.  *See supra* § IV.A.3(a); *City of Chicago*, 321 F. Supp. 3d at 868-69.  In addition, Section 1644 applies only to government actors because only government actors can restrict state or local government entities.  *See supra* n.3.

Second, the United States has argued that Sections 1373 and 1644 fall within an information-gathering exception to the anticommandeering doctrine, but the source of this purported exception is *Printz v. United States*, 521 U.S. 898 (1997), which did not recognize any such exception.  Instead, *Printz* merely distinguished the statute at issue from other statutes, including ones that "require only the provision of information to the Federal Government," stating that "[w]e of course do not address these or other currently operative enactments that are not before us."  *Id.* at 918.  In a later case, the Supreme Court upheld a statute that regulated the use of motor vehicle records by *both state and private actors*, holding that the statute "does not require the States in their sovereign capacity to regulate their own citizens," but "regulates the States as the owners of data bases."  *Reno v. Condon*, 528 U.S. 141, 143, 151 (2000).  Sections 1373 and 1644 are fundamentally different than the statutes at issue in *Printz* and *Reno*.  They regulate state and local governments in their sovereign capacity to regulate themselves and their officials.  *See City of Chicago*, 321 F. Supp. 3d at 872 ("Section 1373 is more than just an information-sharing provision" because it "prohibits certain rule making by state policymakers.").

Third, the United States has argued that Sections 1373 and 1644 are valid preemption provisions that ensure states do not "undo federal deregulation with regulation of their own."  *See Murphy*, 584 U.S. at 478 (describing the purpose of a preemption provision).  As the Supreme Court has held, however, a valid preemption provision must regulate private actors because Congress has the power to regulate individuals—not states.  *Id.* at 477.  There is no way to read Sections 1373 and 1644 as regulations of private actors.  The laws regulate how state and local governments regulate themselves and their officials, which is an exclusively governmental act.  *See*

16

*Murphy*, 584 U.S. at 479-80 (provision prohibiting state authorization of sports gambling was "a direct command to the States" and "exactly what the anticommandeering rule does not allow"); *Ocean County Bd. of Comm'rs v. Attorney Gen.*, 8 F.4th 176, 181-82 (3d Cir. 2021) (Sections 1373 and 1644 are not valid preemption provisions).

Although Sections 1373 and 1644 do not preempt the Ordinance, to the extent they do, they would violate the Tenth Amendment and the anticommandeering doctrine because they would dictate what laws and rules state and local governments cannot adopt, contrary to fundamental principles of federalism.

### B.    The United States Does Not, and Cannot State a Claim Under the Intergovernmental Immunity Doctrine

The United States asserts two separate claims for violation of the intergovernmental immunity doctrine based on unlawful regulation of the federal government and unlawful discrimination against the federal government. Compl. ¶¶ 71-83. Neither claim has merit.

### 1.    The Ordinance Is Not an Unlawful Regulation of the Federal Government

Under the Supremacy Clause, a state or local regulation is an unlawful regulation of the federal government "only if it regulates the United States *directly*." *North Dakota v. United States*, 495 U.S. 423, 434-35 (1990) (emphasis added). Here, the Ordinance does not regulate the United States directly or at all; it instead exclusively regulates City personnel and resources. *See supra* § II.B. The United States fails to allege how the Ordinance regulates the federal government. The Complaint alleges that "[t]he Ordinance attempts to single out federal immigration officials," but that is an argument for unlawful discrimination, discussed below. Compl. ¶ 73; *infra* § IV.B.2. The Complaint also alleges that the Ordinance prohibits City personnel from complying with administrative warrants, which "eliminate[s] these means for federal immigration officials to carry out their statutory functions." Compl. ¶¶ 74-76. But the City has not

17

eliminated the use of administrative warrants. Federal authorities are still free to issue administrative warrants, but the Ordinance prohibits City personnel from responding to them. As the Ninth Circuit held in *California*, a state or local government is not compelled to comply with an administrative warrant. *California*, 921 F.3d at 887; 8 U.S.C. §§ 1226, 1357.

The United States cannot save its claim by arguing that the Ordinance's restrictions on sharing information with City contractors in Section 19.192 is an unlawful regulation of the federal government through federal contractors, as argued in *Geo Group, Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022), and *United States v. King County*, 122 F.4th 740 (9th Cir. 2024). Each of those cases dealt with direct regulations of contractors that the federal government relied on to accomplish immigration enforcement activities to eliminate the federal government's ability to use those contractors. *Geo Group*, 50 F.4th at 750 (addressing state law that prohibited contractors from operating private detention facilities in California relied on by the federal government); *King County*, 122 F.4th at 747, 756 (addressing executive order that prohibited private operators from servicing ICE charter flights at an airfield). Here, the Ordinance does not directly regulate contractors, but instead regulates City employees' disclosure of information to City contractors. *See supra* § II.B. The Ordinance has no effect on the federal government hiring contractors. If a contractor refuses to sign the required agreement, the City will either not provide the contractor with the information covered by Section 19.192 or not do business with the contractor if the information is necessary to the contractor's work. The United States cannot dispute that a government entity is free to set the terms of its own contracts with its private contractors.

Simply put, the Ordinance on its face is a regulation of City personnel and resources—not a regulation of the federal government or federal contractors. The City's regulation of itself does not violate the intergovernmental immunity doctrine, and this claim must be dismissed.

RULE 12(b)(6) MOTION TO DISMISS COMPLAINT

### 2.    The Ordinance Does Not Improperly Discriminate Against the Federal Government

"[A] state law discriminates against the Federal Government or its contractors if it 'single[s them] out' for less favorable 'treatment,' . . . or if it regulates them unfavorably on some basis related to their governmental 'status.'"  *United States v. Washington*, 596 U.S. 832, 839 (2022) (internal citations omitted).  The United States alleges that the Ordinance singles out federal immigration laws for unfavorable treatment by forbidding City personnel from engaging in certain conduct "for the purpose of Immigration Enforcement" and from responding to administrative warrants. Compl. ¶¶ 80-81.  The United States also alleges that the Ordinance singles out federal immigration officials for unfavorable treatment by restricting City personnel from allowing them to access non-public areas of City property, from making persons in City custody available to them for immigration interviews, and from providing certain City data and information to City contractors without a required nondisclosure agreement. *Id.* ¶ 81.  Again, the Ninth Circuit's decision in *California* requires dismissal of this claim.

In *California*, the United States raised the very same discrimination challenge to the Values Act, which forbids state law enforcement agencies from engaging in certain conduct for "immigration enforcement purposes," defined substantially the same as in the Ordinance, and from responding to administrative warrants.  *See supra* § II.C; *California*, 921 F.3d at 891.  The Ninth Circuit summarily rejected the challenge, holding that "[a] finding that [the Values Act] violates the doctrine of intergovernmental immunity would imply that California *cannot* choose to discriminate against federal immigration authorities by refusing to assist their enforcement efforts—a result that would be inconsistent with the Tenth Amendment and the anticommandeering rule." *California*, 921 F.3d at 891 (emphasis in original).

The Ninth Circuit's holding applies equally to the other challenged provisions in the Ordinance that forbid City personnel from allowing federal immigration agents to

access non-public areas of City property, from making persons in City custody available to federal immigration agents for immigration enforcement interviews, and from providing certain City data and information to City contractors without a required nondisclosure agreement. A finding that the City cannot refuse to assist federal immigration authorities by denying them access to non-public areas of City property, persons in City custody, or City data and information would run afoul of the Tenth Amendment and the anticommandeering doctrine. *See id.*; *supra* § IV.A.3(c).

In its effort to portray the Ordinance as discriminatory, the United States misrepresents its provisions. In the provision requiring a nondisclosure agreement from City contractors before City personnel can provide them with certain City data and information, the City is not impairing federal immigration authorities' freedom of contract, as the United States alleges, but regulating its own contracts with contractors. *Compare* Compl. ¶ 81, *with* RJN, Ex. G (§ 19.192), *and supra* § IV.B.1. The City also is not singling out federal immigration authorities in its nondisclosure requirement. As the last sentence of Section 19.192 provides, City employees must not disclose information that can be used to distinguish or trace a person's Citizenship or Immigration Status to anyone outside the City—not just the federal government. RJN, Ex. G (§ 19.192).

Indeed, the Ninth Circuit's recent decision in *Nwauzor* demonstrates that the United States' discrimination analysis is fundamentally flawed. *Nwauzor*, 127 F.4th at 763-64. As the Ninth Circuit has held, "[a] state law or regulation discriminates against the federal government if it treats comparable classes of federal and state employees differently, advantaging the state employees." *Id.* at 763. In the immigration enforcement context, there are not comparable classes of federal and state employees or laws because only Congress can pass immigration enforcement laws and determine who enforces those laws. *See* Compl. ¶¶ 23-27; *Arizona*, 567 U.S. at 408-09. The City is therefore not favoring state immigration enforcement laws or officials because it is simply not possible. Comparing federal immigration enforcement laws and officials

RULE 12(b)(6) MOTION TO DISMISS COMPLAINT

with other, unrelated laws and officials is comparing apples and oranges, and it is not a proper analysis for unlawful discrimination under the intergovernmental immunity doctrine. *See Nwauzor*, 127 F.4th at 763-64.

As the Ninth Circuit has held, a law restricting a state or local government and its personnel from cooperating with federal immigration enforcement and officials, as the Ordinance does, is not an unlawful discrimination of the federal government, requiring dismissal of this claim under the intergovernmental immunity doctrine. *See California*, 921 F.3d at 891

## C.    The United States Does Not State Separate Claims Against the City Council, Mayor Bass, and Council President Harris-Dawson

Although the entire action should be dismissed for failure to state a claim, to the extent any claim remains, all Defendants other than the City of Los Angeles should be dismissed because they are redundant of Defendant City of Los Angeles. Specifically, the Los Angeles City Council is not a separate legal entity, but the legislative and governing body of the City of Los Angeles. RJN, Ex. H (L.A. Admin. C. §§ 2.1, 2.2). It therefore should be dismissed not only because it is redundant of the City of Los Angeles, but also because the only claim alleged against it is passage of the Ordinance, for which it has absolute legislative immunity. *See 1210 Cacique Street, LLC v. City of Santa Barbara*, 2024 WL 1600323, at *3 (C.D. Cal. Mar. 1, 2024) (dismissing City Council as a defendant because it was not a separate legal entity from the City defendant and therefore redundant); *Porto v. City of Laguna Beach*, 2012 WL 3810475, at *4-5 (C.D. Cal. Aug. 7, 2012) (dismissing City Council because claims were based only on adoption of an ordinance, for which it had absolute legislative immunity). Mayor Bass and Council President Harris-Dawson are sued in their official capacities, which is merely another way of asserting a claim against the City of Los Angeles. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). These defendants should therefore be dismissed as redundant of the City of Los Angeles. *See Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) ("When both

21

a municipal officer and a local government entity are named [as defendants], and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant.").

## V.    CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court dismiss this action with prejudice because all claims have legal defects that are incurable.

Dated:  August 21, 2025          HYDEE FELDSTEIN SOTO, City Attorney
                                 VALERIE FLORES, Chief Assistant City Attorney
                                 KATHLEEN KENEALY, Chief Assistant City Attorney
                                 GABRIEL S. DERMER, Assistant City Attorney
                                 MOLLY STEPHENS, Deputy City Attorney

                      By:    _/s/ Molly Stephens_____
                                 Molly Stephens, Deputy City Attorney
                                 Attorneys for Defendants

RULE 12(b)(6) MOTION TO DISMISS COMPLAINT

**Certificate of Compliance**

Pursuant to Central District of California Local Rule 11-6.1, the undersigned, counsel of record for Defendants City of Los Angeles, Karen Bass, the Los Angeles City Council, and Marqueece Harris-Dawson, certifies that the attached Memorandum of Points and Authorities contains 6,957 words, excluding the caption, table of contents, table of authorities, and signature block, in compliance with the word limit of Local Rule 11-6.1.


Dated:  August 21, 2025          HYDEE FELDSTEIN SOTO, City Attorney
                                 VALERIE FLORES, Chief Assistant City Attorney
                                 KATHLEEN KENEALY, Chief Assistant City Attorney
                                 GABRIEL S. DERMER, Assistant City Attorney
                                 MOLLY STEPHENS, Deputy City Attorney

                                 By:   _/s/ Molly Stephens_____
                                       Molly Stephens, Deputy City Attorney
                                       Attorneys for Defendants