HYDEE FELDSTEIN SOTO, City Attorney (SBN 106866)
VALERIE FLORES, Chief Deputy City Attorney (SBN 138572)
KATHLEEN KENEALY, Chief Assistant City Attorney (SBN 212289)
GABRIEL S. DERMER, Assistant City Attorney (SBN 229424)
MOLLY STEPHENS, Deputy City Attorney (SBN 232211)
Office of the Los Angeles City Attorney
200 North Main Street, City Hall East, 6th Floor
Los Angeles, California 90012
Telephone:  213-978-1868
Facsimile:  213-978-7011
Email:  molly.stephens@lacity.org

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CITY OF LOS ANGELES; KAREN BASS, Mayor of Los Angeles, in her official capacity; LOS ANGELES CITY COUNCIL; MARQUEECE HARRIS-DAWSON, President of the Los Angeles City Council, in his official capacity,<br><br>　　　　　Defendants. | Case No.: 2:25-cv-05917-FMO-JC<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(b)(6)**<br><br><u>Hearing</u><br>Date:  October 2, 2025 (selected date of September 25, 2025 is closed)<br>Time:  10:00 a.m.<br>Courtroom 6D<br>Hon. Fernando M. Olguin |

**<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION ................................................................................................. 1

II.     LEGAL ARGUMENT ......................................................................................... 1

        A.      The Opposition Ignores the Ninth Circuit's Controlling Rulings in
                *California* ............................................................................................... 1

        B.      Stringent Standards Govern This Facial Challenge to an Ordinance
                Within the City's Historic Police Power .............................................. 3

        C.      The Opposition Confirms That the United States Does Not, and Cannot,
                State an Express Preemption Claim ...................................................... 4

                1.      The Opposition Cannot Identify a Direct Conflict Between the
                        Ordinance and Section 1373 (or Section 1644) ............................ 4

                2.      Sections 1373 and 1644 Are Not Valid Preemption Statutes and
                        Violate the Tenth Amendment .................................................... 7

        D.      The Opposition Confirms That the United States Does Not, and Cannot,
                State a Conflict Preemption Claim ........................................................ 9

        E.      The Opposition Confirms That the United States Does Not, and Cannot
                State a Claim Under the Intergovernmental Immunity Doctrine ............. 12

                1.      The Ordinance Does Not Improperly Discriminate Against the
                        Federal Government .................................................................... 12

                2.      The Ordinance Is Not an Unlawful Regulation of the Federal
                        Government ................................................................................. 14

        F.      The Opposition Does Not Dispute That the City Council, Mayor Bass,
                and Council President Harris-Dawson Should Be Dismissed ................. 16

III.    CONCLUSION ................................................................................................. 16

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*Arizona v. United States*,
    567 U.S. 387 (2012) ................................................................................14

*Chamber of Commerce v. Whiting*,
    563 U.S. 582 (2011) ..................................................................................3

*City of Chicago v. Sessions*,
    321 F. Supp. 3d 855 (N.D. Ill. 2018) ........................................................8

*City of New York v. United States*,
    179 F.3d 29 (2d Cir. 1999) ........................................................................8

*Frisby v. Schultz*,
    487 U.S. 474 (1988) ..................................................................................7

*Gartrell Const. Inc. v. Aubry*,
    940 F.2d 437 (9th Cir. 1991) ...................................................................11

*Geo Group, Inc. v. Newsom*,
    50 F.4th 745 (9th Cir. 2022) ..............................................................11, 14

*Leslie Miller, Inc. v. Arka,*
    *nsas*, 352 U.S. 187 (1956) ......................................................................14

*Mayo v. United States*,
    319 U.S. 441 (1943) ................................................................................14

*Murphy v. National Collegiate Athletic Association*,
    584 U.S. 453 (2018) ...............................................................................8, 9

*North Dakota v. United States*,
    495 U.S. 423 (1990) .............................................................................13, 15

*Nwauzor v. GEO Group, Inc.*,
    127 F.4th 750 (9th Cir. 2025) ...................................................................4

ii

*Ocean County Bd. of Comm'rs v. Attorney Gen.*,
  8 F.4th 176 (3d Cir. 2021) ............................................................7

*RUI One Corp. v. City of Berkeley*,
  371 F.3d 1137 (9th Cir. 2004) ......................................................6

*United States v. California*,
  921 F.3d 865 (9th Cir. 2019) ..................................................passim

*United States v. City of Arcata*,
  629 F.3d 986 (9th Cir. 2010) ......................................................14

*United States v. Ferrara*,
  847 F. Supp. 964 (D.D.C. 1993) ..................................................14

*United States v. Illinois*,
  -- F. Supp. 3d --, 2025 WL 2098688 (N.D. Ill. July 25, 2025) ............8, 14

*United States v. King County*,
  122 F.4th 740 (9th Cir. 2024) .................................................13, 14

*Vardanega v. Internal Revenue Service*,
  170 F.3d 1184 (9th Cir. 1999) ......................................................4


Statutes

8 U.S.C. § 1357(g)(10) ..................................................................3

8 U.S.C. § 1373 ....................................................................passim

Cal. Gov. Code § 7284.6 ...........................................................5, 10

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

## I.    INTRODUCTION

The Motion established that the Ordinance at issue mirrors a California state law known as the Values Act, which was upheld as constitutional by the Ninth Circuit in an opinion rejecting many of the very same challenges raised in this case.  *United States v. California*, 921 F.3d 865 (9th Cir. 2019).[1]  The Opposition utterly ignores the contrary rulings in *California*, pressing the same arguments that were rejected by the Ninth Circuit.  Like the Values Act, the Ordinance prohibits the City from cooperating in immigration enforcement, and as the Ninth Circuit held, such non-cooperation is not preempted by federal law and does not unlawfully discriminate against the federal government.  The Ninth Circuit's decision in *California* requires dismissal of the preemption claims and the claim for unlawful discrimination in violation of the intergovernmental immunity doctrine.

The Opposition confirms that the United States' remaining claim for unlawful regulation of the federal government in violation of the intergovernmental immunity doctrine must also be dismissed.  The case law makes clear that an actionable claim for unlawful regulation of the federal government requires a *direct regulation* of the federal government, its officials, or its contractors.  Here, the Ordinance regulates only the City and its contractors' receipt of the City's data.  Despite the United States' tortured efforts to characterize the Ordinance as a direct regulation of the federal government, it is not.

This facial challenge to the Ordinance should be dismissed with prejudice.  The defects identified in the Motion are legal defects that cannot be cured.

## II.    LEGAL ARGUMENT

### A.    The Opposition Ignores the Ninth Circuit's Controlling Rulings in *California*

The Opposition does not dispute that multiple provisions of the Ordinance mirror provisions of the Values Act, including (i) Section 19.191(a), prohibiting City personnel

---

[1]  Capitalized terms used, but not defined, in this Reply have the same meanings as in the Motion.

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

from inquiring into or collecting information about an individual's Citizenship or Immigration Status; (ii) Section 19.191(b), prohibiting City personnel from investigating, citing, arresting, holding, transferring, or detaining a person for Immigration Enforcement absent a judicial warrant or probable cause determination; (iii) Section 19.191(c), prohibiting City personnel from responding to an administrative warrant or other request to detain, transfer, or notify an Immigration Agent about a person's status or release; and (iv) Section 19.191(f), prohibiting City personnel from participating in Immigration Enforcement operations, joint operations, or joint task forces. *Compare* Mot. at 5-6, *with* Opp. at 5-6. The United States asserts that Section 19.192, prohibiting City personnel from disclosing personal information that can be used to determine or trace a person's Citizenship or Immigration Status except as required by 8 U.S.C. § 1373, goes beyond provisions in the Values Act. Opp. at 5-6. But the Values Act also has provisions prohibiting disclosure of this kind of personal information. Mot. at 6.

Although the Ninth Circuit upheld the Values Act as constitutional in *California* and issued rulings that apply equally to the Ordinance, the Opposition fails to acknowledge or address the contrary rulings. *See* Opp. at 7-10 (failing to acknowledge or address the Ninth Circuit's rulings regarding the preemptive effect of 8 U.S.C. § 1373), 10-15 (failing to acknowledge or address the Ninth Circuit's rulings regarding conflict preemption), 16-19 (failing to acknowledge or address the Ninth Circuit's rulings regarding unlawful discrimination under the intergovernmental immunity doctrine). Indeed, the Opposition even goes so far as to misquote language from *California* to support arguments rejected by the Ninth Circuit, including challenges to state laws that prohibit inquiry into a person's immigration status, that prohibit cooperation with federal immigration enforcement, and that single out federal immigration officers. *See* Opp. at 9, 15, 17. As set forth in more detail below, *California* requires dismissal of many of the claims asserted in this case.

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

**B.      Stringent Standards Govern This Facial Challenge to an Ordinance
Within the City's Historic Police Power**

The United States does not dispute that this case presents a facial challenge to the
Ordinance, which requires that no set of circumstances exists under which the Ordinance
would be constitutional.  *See* Mot. at 7-8; Opp. at 5-6.  Moreover, the United States must
also overcome a presumption against preemption because the Ordinance regulates in an
area of historic state and local power.  Mot. at 9 (citing cases).

The United States disputes the application of the presumption to what it
characterizes as its "express preemption" claim based on 8 U.S.C. §§ 1373 and 1644,
arguing that the presumption "does not apply in the express preemption context."  Opp.
at 7 & n.1.[2]  This argument does not affect the presumption's application to the claim
for conflict preemption.  *See Chamber of Commerce v. Whiting*, 563 U.S. 582, 600, 607
(2011) (conflict preemption is a type of implied preemption subject to a high threshold);
Mot. at 9.  In addition, as set forth in the Motion and in more detail below, Sections 1373
and 1644 are not valid express preemption provisions.  *See* Mot. at 16-17; *infra* § II.C.2.

The United States also disputes the application of the presumption to its conflict
preemption claim, asserting that the Ordinance regulates activities that are "'inherently
federal in character.'"  Opp. at 13-14.  As established in the Motion, however, the
Ordinance regulates only City personnel and resources to maintain a relationship of trust,
respect, and cooperation with City residents to promote their welfare and safety.  Mot.
at 3-5.  The United States cannot seriously contend that the regulation of local
government personnel and resources for the welfare and safety of the local community
is not an area of historic state power.  *See* Mot. at 9.  Indeed, the Ninth Circuit applied
the presumption against preemption to the Values Act, which mirrors the Ordinance.
*See California*, 921 F.3d at 887; Mot. at 5-6.  The United States' argument that the

---

[2]  Although the Complaint cited a third statute, 8 U.S.C. § 1357(g)(10), in support
of the preemption claim, the Opposition does not dispute that this statute does not impose
any requirements on state and local governments.  Mot. at 12; Opp. at 7-10.

3

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

presumption against preemption does not apply to any law that affects an area of historical federal power, such as immigration, has been explicitly rejected by the Ninth Circuit. *See* Opp. at 13-14; *Nwauzor v. GEO Group, Inc.*, 127 F.4th 750, 768 (9th Cir. 2025) (holding that "[o]nce triggered, the presumption against preemption applies even if the law touch[es] on an area of significant federal presence," and "[t]he presumption applies to state laws that affect areas of exclusive federal regulation, such as immigration") (internal quotation marks omitted).

## C. The Opposition Confirms That the United States Does Not, and Cannot, State an Express Preemption Claim

The United States contends that it has stated an express preemption claim based on 8 U.S.C. §§ 1373 and 1644, which it admits are functionally equivalent. Opp. at 7-10. For an express preemption claim, the Ordinance must directly conflict with 8 U.S.C. §§ 1373 and 1644, and these statutes must be valid, constitutional statutes. The Opposition confirms that the claim fails on all counts.

### 1. The Opposition Cannot Identify a Direct Conflict Between the Ordinance and Section 1373 (or Section 1644)

The Motion established that Section 19.191(a) of the Ordinance, which prohibits inquiring into or collecting certain personal information, does not directly conflict with Section 1373, which prohibits exchanging or maintaining a person's immigration status that has already been collected. Mot. at 13. The United States disputes this distinction, arguing that because Section 1373 contains language prohibiting state and local governments from "in any way restrict[ing]" the exchange or maintenance of a person's immigration status, that also prohibits state and local governments from restricting the collection of such information. Opp. at 9. The logic does not follow. Section 1373 specifically identifies the types of activities it covers, including the maintenance of information, whether or not it has been exchanged. *See* 8 U.S.C. § 1373(b). Had Congress wanted to cover the prior collection of information, it would have said so. *See Vardanega v. Internal Revenue Service*, 170 F.3d 1184, 1185-86 (9th Cir. 1999)

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

("[w]hen interpreting a statute, [courts] first look to the plain language of the statute"). In addition, the United States utterly fails to address the decision in *California*, which it disingenuously cites in its favor. *See* Opp. at 9. In *California*, the Ninth Circuit held that the Values Act, which contains a similar prohibition on "[i]nquiring into an individual's immigration status," does not conflict with Section 1373. *California*, 921 F.3d at 893; Cal. Gov. Code § 7284.6(a)(1)(A). That decision controls here.

The United States' express preemption claim therefore turns on Section 19.192 of the Ordinance. *See* Opp. at 7-9. The Motion presented multiple reasons why there is no conflict between Section 19.192 and Section 1373, including that Section 19.192 prohibits the exchange of information not covered by Section 1373 and contains a savings clause to allow compliance with Section 1373. Mot. at 13-14. The United States argues that the prohibition in Section 19.192 on sharing "data or information that can be used to determine or trace a person's Citizenship or Immigration Status," defined broadly in the Ordinance, "imposes exactly the restriction that 8 U.S.C. § 1373 prohibits." Opp. at 8. But the Ninth Circuit has held multiple times that Section 1373 covers only a person's legal immigration classification under federal law, such as whether the person is a citizen or lawful permanent resident. *See* Mot. at 14; *California*, 921 F.3d at 891. Data or information that has some other non-immigration function but could be used to determine or trace a person's immigration status, such a person's foreign passport, birthplace, age, or mailing address, is different and thus not within the scope of Section 1373.

In addition, to the extent there could be any overlap between Section 19.192 and Section 1373 (which there is not), the prohibition in Section 19.192 is preceded by a savings clause that explicitly excludes conduct "required by 8 U.S.C. § 1373." RJN, Ex. G (§ 19.192). The United States argues that the savings clause is ineffective in light of "the Ordinance's stated objectives," but the United States does not explain how the stated objectives of prohibiting City resources from being used for immigration enforcement or cooperation mandate violation of federal law. *See* Opp. at 7-8.

5

Moreover, the stated objectives are non-binding statements of rationale for adopting the Ordinance and do not appear in the operational language of the Los Angeles Administrative Code in which the Ordinance appears. *See* RJN, Ex. G. As the Ninth Circuit has directed, "the constitutionality of an ordinance must proceed from the text of the ordinance, not the alleged motives behind it." *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1146 n.7 (9th Cir. 2004).

The United States also argues that the savings clause is ineffective because Section 1373 does not *require* the exchange or maintenance of a person's immigration status, but only prohibits restrictions on voluntary exchange or maintenance. *See* Opp. at 8 (emphasis in original). As an initial matter, the United States is playing a game of semantics. In the same paragraph where the United States argues that Section 1373 does not require an exchange of information, it argues that Section 1373, in fact, "requires" an exchange. *Id.* ("Los Angeles' 'savings clause' forces City personnel to walk an impossibly fine line of being able to disclose 'Citizenship or Immigration Status' *as Section 1373 requires*") (emphasis added).

In any event, Section 1373 undisputedly has mandatory requirements that no person, including local government entities or officials, may prohibit or in any way restrict a government entity or official from exchanging a person's immigration status with INS. 8 U.S.C. §§ 1373(a)-(b). Section 19.192 of the Ordinance provides that, *except as required by 8 U.S.C. § 1373*, City personnel, as agents of the City, shall not provide access to City data or information that can be used to determine or trace a person's Citizenship or Immigration Status. RJN, Ex. G (§ 19.192). Because Section 1373 requires City personnel not to prohibit or restrict access to a person's immigration status, the savings clause in Section 19.192 explicitly excludes that conduct from the Ordinance. There is no direct conflict between the two laws: City personnel can prohibit access to City data or information that can be used to determine or trace a person's Citizenship or Immigration Status, but they cannot prohibit access to a person's immigration status. To the extent the United States' overly narrow interpretation of the

6

savings clause has any merit, it should be rejected in accordance with "the well-established principle that statutes will be interpreted to avoid constitutional difficulties." *Frisby v. Schultz*, 487 U.S. 474, 483 (1988).

### 2. Sections 1373 and 1644 Are Not Valid Preemption Statutes and Violate the Tenth Amendment

Although there is no direct conflict between the Ordinance and 8 U.S.C. §§ 1373 and 1644, to the extent there is any doubt, the Motion established that the federal statutes cannot preempt the Ordinance because they are not valid preemption statues and because they violate the anticommandeering doctrine under the Tenth Amendment.  Mot. at 14-17.

Without addressing the City's arguments, the United States merely asserts that Sections 1373 and 1644 are valid preemption statutes.  *See* Opp. at 7.  But the United States does not, and cannot, dispute that a valid preemption statute must regulate private actors—not state or local government entities.  *Compare id.*, *with* Mot. at 16-17.  The United States also does not, and cannot, dispute that Sections 1373 and 1644 regulate only state and local government entities and their officials.  *Compare* Opp. at 7, *with* Mot. at 16-17.[3]  Sections 1373 and 1644 are therefore not valid preemption statutes, as other courts have found.  *See Ocean County Bd. of Comm'rs v. Attorney Gen.*, 8 F.4th 176, 181-82 (3d Cir. 2021); *Illinois*, 2025 WL 2098688, at *14-15.

With respect to the City's detailed showing that Sections 1373 and 1644 violate the Tenth Amendment, the United States responds in a single paragraph.  *Compare* Mot. at 14-16, *with* Opp. at 9.  As the Motion established, Sections 1373 and 1644 violate the anticommandeering doctrine under the Tenth Amendment because they force state and local governments to refrain from enacting certain laws, which the Supreme Court held

---

[3]  Later in the Opposition, the United States asserts that the federal immigration laws generally regulate private individuals (immigrants), but that argument does not address Sections 1373 and 1644.  *See* Opp. at 14.  When addressing a preemption statute, courts must analyze the specific statute to determine if it is valid.  *See United States v. Illinois*, -- F. Supp. 3d --, 2025 WL 2098688, at *15 (N.D. Ill. July 25, 2025).

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

in *Murphy* is equivalent to forcing state and local governments to enact certain laws. Mot. at 15; *Murphy v. National Collegiate Athletic Association*, 584 U.S. 453, 474-75 (2018).  The United States does not address this analysis, instead asserting that the statutes fall within a purported "information-gathering exception to the anticommandeering doctrine."  Opp. at 7.  But the Motion showed that the Supreme Court has not explicitly recognized such an exception, and even the United States' quotation from *California*, where the Ninth Circuit was not addressing the constitutionality of either Section 1373 or Section 1644, acknowledges that there has been no explicit holding.  *See* Opp. at 16; *California*, 921 F.3d at 890.  More importantly, the Motion distinguished Sections 1373 and 1644 from typical information-gathering statutes that treat governments and private actors equally as owners of information, as the one in *Reno*.  Mot. at 16.  Unlike those statutes, Sections 1373 and 1644 regulate local governments' sovereign lawmaking function and ability to direct their own personnel, which fall within the anticommandeering doctrine.  *Id.*  The United States never addresses this constitutional infirmity.  Opp. at 9.

The United States emphasizes that while no federal circuit court of appeals has held that Section 1373 or Section 1644 violates the Tenth Amendment, the Second Circuit held the opposite in *City of New York v. United States*, 179 F.3d 29 (2d Cir. 1999).  Opp. at 9-10.  But the Second Circuit's holding, which is not controlling here, turned on the distinction between the federal government affirmatively mandating that state and local governments pass certain laws versus merely prohibiting passage of them. *See City of New York*, 179 F.3d at 34-35.  The Supreme Court eliminated that distinction in *Murphy*.  Mot. at 15; *Murphy*, 584 U.S. at 474-75.  The federal government's prohibition on state and local governments passing certain laws in Sections 1373 and 1644 violates the anticommandeering doctrine under the Tenth Amendment.  *See* Mot. at 15 (citing *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 869-70 (N.D. Ill. 2018)).

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

### D.    The Opposition Confirms That the United States Does Not, and Cannot, State a Conflict Preemption Claim

The Motion established that like the Values Act, the Ordinance is not an obstacle to the enforcement of federal immigration laws and is therefore not conflict preempted. Mot. at 9-11. As the Ninth Circuit held in *California*, refusing to help is not the same as impeding, and because the federal immigration laws make any assistance by state and local governments voluntary, they cannot preempt laws like the Values Act and the Ordinance, which merely prohibit assistance. *See id.*; *California*, 921 F.3d at 886-91.

The Opposition does not address this controlling analysis, which requires dismissal of this claim. *See* Opp. at 10-15. Instead, the Opposition repeats arguments previously rejected by the Ninth Circuit and advances a patently false interpretation of the Ordinance as providing active assistance to illegal immigrants. *See id.* None of the arguments can overcome the Ninth Circuit's controlling opinion.

First, the United States argues that preventing City personnel from responding to administrative warrants and detainers obstructs the "expedited procedure" Congress intended for federal immigration officers "to detain certain criminal illegal aliens immediately upon their release from State or local custody." Opp. at 10-12, 15. This very argument, however, was considered and rejected by the Ninth Circuit in *California* because the Values Act also prohibits law enforcement officers from responding to non-judicial warrants. *See California*, 921 F.3d at 886-88; Cal. Gov. Code § 7284.6(a)(4).[4] As the Ninth Circuit held, even if lack of cooperation makes the jobs of federal immigration officials harder, it is not an obstacle for conflict preemption because nothing compels any state or local official to respond to an administrative warrant or detainer. *California*, 921 F.3d at 887-89. In other words, if a court were to invalidate non-cooperation, that "would *not* prevent obstruction of the federal government's

---

[4] Like the Values Act, the Ordinance does *not* prevent City personnel from responding to judicial warrants or probable cause determinations. *Compare* Ordinance § 19.193, *with* Cal. Gov. Code § 7284.6(a)(4).

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

activities" because cooperation is not required.  *Id.* at 889 (emphasis in original).

That the Ordinance includes provisions restricting access to non-public areas of City property and interviews of people in City custody does not change this analysis. Mot. at 10.  As the United States argues, however, it is knowledge of the ultimate release date of an immigrant from state or local custody that would make the job of federal agents easier, but the Ninth Circuit has already held that a law prohibiting the disclosure of release dates is not conflict preempted.  *See* Opp. at 10-12; *California*, 921 F.3d at 876, 888.  In any event, the reasoning of *California* applies equally to these provisions. Mot. at 10.  The United States does not, and cannot, identify any provision in the federal immigration laws that requires the City to provide federal agents access to non-public areas of City property or to make people in City custody available to federal agents to interview.  *See* Opp. at 3-5, 10-12.  When a state or local government retains the right of refusal, a law exercising that right, as the Ordinance does, cannot be conflict preempted.  *See California*, 921 F.3d at 890.

Second, the United States argues that the Ordinance is conflict preempted because it disrupts "a federal relationship."  *See* Opp. at 12-13.  But the United States cannot identify any legitimate federal relationship that is disrupted by the Ordinance.  The United States contends there is a federal relationship between federal immigration agents and immigrants in City custody who agents want to interview or take into custody, but there is no relationship between federal agents and people who are not in their custody. *See id.*  The Ninth Circuit rejected a similar argument in *California* when the United States asserted the existence of a federal relationship between federal agents and employees of California companies who may be subject to an immigration inspection. *See California*, 921 F.3d at 881.

The United Sates also contends there is a federal relationship between federal immigration agents and their contractors, but the Ordinance does not affect that relationship.  *See* Opp. at 13.  The Ordinance limits the City's disclosure of its own information to its own contractors, but it does not force contractors to refrain from

10

working with federal immigration enforcement, as the United States asserts, nor does it prohibit those contractors from providing their own data to federal agents or receiving data provided by the federal government or other parties. *See id.*; RJN, Ex. G (§ 19.192). Local governments get to set the terms of their own contracts with their contractors and control who may access their own data. The cases cited in the Opposition, which prohibited a state from directly regulating federal contractors over which it had no contractual relationship, do not hold otherwise. *See Gartrell Const. Inc. v. Aubry*, 940 F.2d 437, 438 (9th Cir. 1991); *Geo Group, Inc. v. Newsom*, 50 F.4th 745, 753 (9th Cir. 2022).

Third, without mentioning the *California* ruling at all, the United States takes issue with the City's argument, based on the *California* decision, that the federal government cannot "require" a state or local government to cooperate in immigration enforcement "'without running afoul of the Tenth Amendment.'" Opp. at 14 (citing Mot. at 10-11, quoting *California*, 921 F.3d at 891). The United States asserts that "the Tenth Amendment is not implicated where the federal government seeks to regulate private actors," as it does with illegal immigrants. *See* Opp. at 14. But the United States misses the point made by the Ninth Circuit: the federal immigration laws do not mandate assistance by state and local governments, and they cannot mandate assistance consistent with the Tenth Amendment. *California*, 921 F.3d at 888-91. Because assistance is not mandated, a law prohibiting assistance cannot be conflict preempted. *Id.* at 890-91.

Fourth, without citing any provision of the Ordinance, the United States makes the astounding assertion that the City is "actively facilitating aliens' evasion of federal law by asserting criminal custody over [them] . . . and ultimately terminating custody in a manner that hinders federal detention and removal." Opp. at 14. This is a gross distortion of the Ordinance. There is no provision for asserting criminal custody—and certainly not as a pretense to harbor immigrants from federal custody. *See generally* RJN, Ex. G. There also is no provision for terminating custody. *See id.* While the United States may wish that Congress had provided for the immediate removal of

11

immigrants regardless of pending state and local criminal prosecutions, that is not the law. *See* Opp. at 15. The United States cannot use conflict preemption to prevent the City from exercising its sovereign right not to cooperate with immigration enforcement, as codified in the Ordinance.

**E.    The Opposition Confirms That the United States Does Not, and Cannot State a Claim Under the Intergovernmental Immunity Doctrine**

**1.    The Ordinance Does Not Improperly Discriminate Against the Federal Government**

The Motion set forth two separate reasons why the United States cannot state a claim for unlawful discrimination against the federal government:  (i) the Ninth Circuit rejected the same discrimination claim in the *California* decision upholding the Values Act, which requires dismissal of the claim here; and (ii) there is no comparable class of non-federal agencies or employees for an unlawful discrimination claim. Mot. at 19-21. As the Opposition confirms, the United States cannot overcome either of these legal defects.

First, the United States completely fails to acknowledge or address the Ninth Circuit's rejection in *California* of its discrimination claim under the Values Act, which singles out federal immigration agents in a manner that the federal government considers to be harmful. *Compare* Opp. at 16-19, *with California*, 921 F.3d at 891 (rejecting discrimination challenge to the Values Act), *and id.* at 887-88 (summarizing the United States' argument that the Values Act harmfully singles out federal immigration officers). The holding applies equally to the Ordinance. *See* Mot. at 19-20. Instead of addressing the holding, the United States disingenuously quotes out-of-context other portions of *California* in support of its discrimination claim that *California* explicitly rejected. Opp. at 17. The holding in *California* requires dismissal of this claim.

Second, the Unites States argues that the Ordinance treats federal immigration

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

agents less favorably than other law enforcement agents,[5] but it does not explain how other non-federal law enforcement agents are comparable to federal immigration agents. *See* Opp. at 17-19. As established in the Motion, for unlawful discrimination, there must be a comparable class of non-federal agencies or employees. Mot. at 20-21. The United States' caselaw confirms this standard. For example, the United States fails to quote the full text of *North Dakota v. United States*, 495 U.S. 423 (1990), which makes clear that a regulation is discriminatory only if it applies differently to "other similarly situated constituents of the State." *See id.* at 483; Opp. at 17 (quoting *North Dakota*, but omitting the clarifying phrase from the quote).

As the Motion established, there are no comparable state constituents because only federal agents or officials deputized by federal agents can enforce immigration laws. Mot. at 20-21. The United States' only response is that this would mean no intergovernmental immunity claim based on unlawful discrimination "would be possible in the immigration realm." Opp. at 18. But the very cases cited by the United States demonstrate that its argument is wrong. For example, in *United States v. King County*, 122 F.4th 740 (9th Cir. 2024), the Ninth Circuit held that a law prohibiting private companies from servicing ICE charter flights but not other flights was unlawful discrimination in violation of the intergovernmental immunity doctrine. *Id.* at 747, 757. In that case, there was a class of comparable companies servicing federal and non-federal flights, and the law discriminated against the ones with a federal relationship. *See id.*

Here, there is no comparable class of non-federal agents that the Ordinance favors. Instead, the Ordinance prohibits cooperation with immigration enforcement by anyone, which is not unlawful discrimination of the federal government. *See* RJN, Ex. G (§

---

[5] The United States also argues that the Ordinance treats federal immigration agents less favorably than the general public, but that argument is nonsensical. *See* Opp. at 17. The Ordinance regulates City personnel, non-public areas of City property, and confidential City information. *See*, *e.g.*, RJN, Ex. G (§§ 19.191(d), 19.192). To the extent areas or information are available to the general public, the United States can access them as a member of the general public.

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

19.190) (defining "Immigration Agent" to include anyone enforcing federal immigration laws); *Illinois*, 2025 WL 2098688, at *26 (rejecting similar argument that a law prohibiting cooperation with immigration agents treats those agents worse than other law enforcement agents because the law "discriminates based on the enforcement context … , not governmental status").

### 2.    The Ordinance Is Not an Unlawful Regulation of the Federal Government

As the Motion established, a state or local regulation is an unlawful regulation of the federal government only if it regulates the federal government or its operations directly, including by regulating federal officials or contractors.  *See* Mot. at 17-18.  The United States does not dispute this standard.  *See* Opp. at 19-21.  In fact, every case the United States cites in support of this claim involved a direct regulation of the federal government, its personnel, or its contractors.  *See id.*; *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 188 (1956) (state directly regulating a federal contractor); *Mayo v. United States*, 319 U.S. 441, 444-45 (1943) (state directly regulating the federal government as an owner and distributor of fertilizer); *King County*, 122 F.4th at 747, 756 (state directly regulating federal contractors); *Geo Group, Inc.*, 50 F.4th at 750 (state directly regulating federal contractors); *United States v. City of Arcata*, 629 F.3d 986, 988 (9th Cir. 2010) (cities directly regulating federal agents and employees); *United States v. Ferrara*, 847 F. Supp. 964, 965, 969 (D.D.C. 1993) (state directly regulating a federal official, although the court found no violation of the intergovernmental immunity doctrine).[6]

As the Motion established, no provision of the Ordinance directly regulates the federal government, its personnel, or its contractors as needed for an unlawful regulation

---

[6] The United States also cites *Arizona v. United States*, 567 U.S. 387 (2012), but that case addresses conflict preemption, which is discussed in Section II.D, *supra*.  *See* Opp. at 20 (citing *Arizona*, 567 U.S. at 406, which discusses conflict and obstacle preemption).

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

of the federal government; the Ordinance instead regulates only City personnel and property.  Mot. at 3-4, 17-18.  In response, the United States cites *Geo Group* and *King County*, but as set forth above and in the Motion, those cases dealt with direct regulation of federal contractors.  *See* Opp. at 20-21; Mot. at 18.

The United States also objects that the Ordinance imposes a confidentiality condition on the City's contractual relationships with its contractors, but the United States never addresses that the City is free to set the terms of its contracts, including as to the confidentiality of the City's information.  *See* Opp. at 20; RJN, Ex. G (§ 19.192).  Contrary to the United States' assertion, the City does not admit that "it refuses to work with contractors unless the contractor toes the Ordinance's line not to provide immigration-related information to federal authorities."  Opp. at 20.  Neither the Ordinance nor Motion says any such thing.  Instead, as is typical in the transfer of confidential information, if a contractor does not agree to the confidentiality terms, the City will not provide the information or, if the information is necessary to the contractor's work, will not enter into a contract with the contractor for that work.  Mot. at 18.  Even if the City refused to work with a contractor for a specific job, that has no effect on the contractor's ability to perform other work for the City or the contractor's relationship with the federal government.  *See* Opp. at 20.  The contractor is still free to work with the federal government and retains all of its own skills and know-how.  The contractor simply does not have possession of the City's own confidential information, which it would not have anyway.

Finally, the United States repeats its allegations that the Ordinance forecloses the use of administrative warrants and detainers by federal officials, thereby constituting a direct regulation of the federal government.  Opp. at 19-20.  But the Ordinance does not regulate the federal government or federal officials at all, as required for an unlawful regulation of the federal government.  *See*, *e.g.*, *North Dakota*, 495 U.S. at 436-37.  The federal government is free to use any method it wants to detain immigrants, but the Ordinance merely prohibits the City from cooperating in those methods, which the City

15

has a sovereign right to refuse because cooperation is voluntary.  Mot. at 17-18.

The United States simply has no basis to assert a claim against the City for an unlawful direct regulation of the federal government when the Ordinance does not directly regulate the federal government, its officials, or its contractors.

### F.    The Opposition Does Not Dispute That the City Council, Mayor Bass, and Council President Harris-Dawson Should Be Dismissed

The Motion established that to the extent any claims remain, all defendants other than the City of Los Angeles should be dismissed because they are redundant or have absolute immunity.  Mot. at 21-22.  The United States does not dispute that dismissal of these defendants is appropriate.

## III.    CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court dismiss this action with prejudice.


Dated:  September 18, 2025    HYDEE FELDSTEIN SOTO, City Attorney
VALERIE FLORES, Chief Deputy City Attorney
KATHLEEN KENEALY, Chief Assistant City Attorney
GABRIEL S. DERMER, Assistant City Attorney
MOLLY STEPHENS, Deputy City Attorney

By:    _/s/ Molly Stephens_____
Molly Stephens, Deputy City Attorney
Attorneys for Defendants

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

**Certificate of Compliance**

   Pursuant to Central District of California Local Rule 11-6.1, the undersigned, counsel of record for Defendants City of Los Angeles, Karen Bass, the Los Angeles City Council, and Marqueece Harris-Dawson, certifies that the attached Memorandum of Points and Authorities contains 5,329 words, excluding the caption, table of contents, table of authorities, and signature block, in compliance with the word limit of Local Rule 11-6.1.


Dated:  September 18, 2025    HYDEE FELDSTEIN SOTO, City Attorney
             VALERIE FLORES, Chief Deputy City Attorney
             KATHLEEN KENEALY, Chief Assistant City Attorney
             GABRIEL S. DERMER, Assistant City Attorney
             MOLLY STEPHENS, Deputy City Attorney

             By:   */s/ Molly Stephens*
             Molly Stephens, Deputy City Attorney
             Attorneys for Defendants